900003547

**ORIGINAL**

SEALED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2023 JAN 25  PM 1: 54

Enerra Corporation,

        Plaintiff,

  vs.

Conti Group LLC, PlastikGas LLC, Roberto Conti,
Julie Conti and Robert Jordan Conti,

        Defendants.

Civil Action No.

DEPUTY CLERK_____

**3-23CV0194-L**

JURY TRIAL DEMANDED

**FILED UNDER SEAL**

## COMPLAINT

Plaintiff Enerra Corp. ("Enerra" or "Plaintiff") for its Complaint against Defendants Conti Group LLC, PlastikGas LLC, Roberto Conti, Julie Conti and Robert Jordan Conti (collectively, "Defendants"), alleges as follows:

### INTRODUCTION

1.    This action concerns Defendants' fraudulent "bait and switch" tactics used to induce the Enerra to enter agreements to purchase Defendants' plastic to fuel conversion system under false pretenses, and Defendants' subsequent refusal to honor even the most basic terms of the agreements between the parties.

2.    To induce Enerra to enter into an exclusive licensing agreement and several agreements to purchase multi-million-dollar plastic to fuel conversion plants, coupled with a commitment to purchase a total of 40 plants over 7 years, Defendants promised Enerra that their plastic to fuel conversion technology was completed and ready for commercial operations.

3.    In reliance on Defendants' promises, Enerra entered the agreements with Defendants and paid them millions of dollars.  In fact, Defendants concealed from Enerra that their plastic to fuel conversion technology was still in development and did not perform as Defendants

had represented to Enerra.

4.      This intention was concealed from Enerra prior to execution of the agreement and—as Defendants knew—it would have been a nonstarter for Enerra, who would have never agreed to purchase an incomplete, non-functional technology and act as a guinea pig for Defendants' ongoing development.

5.      To persuade Enerra to enter into the agreements with Conti and forgo other opportunities, Conti and PlastikGas, through their officers and agents Roberto Conti, Julie Conti and Robert Jordan Conti represented to Enerra that:

      a. Conti's and PlastikGas' plastic to fuel conversion system would accept all types of plastic including polyvinyl chloride (PVC) and acrylic coated plastic;

      b. Conti's and PlastikGas' plastic to fuel conversion system had a complete batch time of 6 to 8 hours;

      c. Conti's and PlastikGas' plastic to fuel conversion system was a state-of-the-art device with little to no labor needed to maintain operations and ready for commercial development;

      d. Conti's and PlastikGas' plastic to fuel conversion system would take organic material in the feedstock, including cardboard. paper, food particles, stickers and that organics would turn into ash having no effect on the technology such as increased clogging between the reformer;

      e. Conti's and PlastikGas' plastic to fuel conversion system would accept inorganic materials such as dirt, water and metal with no problems except a proportionate reduction in output of product; and that

      f. Conti's and PlastikGas' plastic to fuel conversion system was safe to operate and Defendants would provide complete, thorough, and well-documented training to Enerra's staff.

6.      These were all lies designed to induce Enerra to enter into the agreements.

7.      After fraudulently inducing Enerra to enter into the agreements and paying millions of dollars, Defendants proceeded to systematically breach the promises that were made in the agreements, including: (i) the promise that the plastic to fuel system meets the required specifications, such as batch times, fuel yields and gasoline octane levels, (ii) the promise to train

Enerra personnel, and (iii) the promise that the plants would be of acceptable quality and safe, and (iv) the promise to repair defects to the plants as part of the provided warranty.

8.      Enerra brings this action to redress the significant harm they have suffered, and to hold Defendants accountable for their fraudulent representations and broken promises.

## THE PARTIES

9.      Plaintiff Enerra Corp., formerly known as Plastic Fuel, Inc., is a California corporation with a Principal Place of Business at 2259 South Vista Avenue, Bloomington, California 92316.

10.     Defendant Conti Group LLC ("Conti") is a Texas limited liability corporation with its principal place of business at 106 North Denton Tap Road, Suite 210-236, Coppell, Texas 75019.  Upon information and belief, the members of Conti are Roberto Conti and Julie Conti, both residents of Texas, and Conti is, and at all relevant times was, authorized to do business in Texas.

11.     Defendant PlastikGas LLC (PlastikGas") is a Texas limited liability corporation with its principal place of business at 941 Pintail Ct., Coppell, Texas 75019.  Upon information and belief, the members of PlastikGas are Roberto Conti and Julie Conti, both residents of Texas, and PlastikGas is, and at all relevant times was, authorized to do business in Texas.

12.     Defendant Roberto Conti is an individual resident of Texas with a place of business at 106 North Denton Tap Road, Suite 210-236, Coppell, Texas 75019. Roberto Conti is the President/CEO of PlastikGas.

13.     Defendant Julie Conti, the wife of Roberto Conti, is an individual resident of Texas with a place of business at 106 North Denton Tap Road, Suite 210-236, Coppell, Texas 75019. Julie Conti is the Vice President of PlastikGas.

14.     Defendant Robert Jordan Conti ("Jordan Conti"), the son of Roberto and Julie

Conti, is an individual resident of Texas with a place of business at 106 North Denton Tap Road, Suite 210-236, Coppell, Texas 75019. Upon information and belief, Jordan Conti is the Vice President of Business Implementation for PlastikGas.

15.     Other individuals or entities are believed to be involved with the allegations herein. Enerra will move to amend this Complaint to show their true names and capacities when the same have been ascertained.

16.     Upon information and belief, at all times relevant hereto, Defendants Conti and PlastikGas are and were the alter egos of Defendants Roberto Conti, Julie Conti and Jordan Conti, and each of them, and there exists, and at all times relevant hereto has existed, a unity of interest and ownership between Conti, PlastikGas, Roberto Conti, Julie Conti and Jordan Conti, such that any separateness between them ceased to exist in that Defendants Roberto Conti, Julie Conti and Jordan Conti completely controlled, dominated, managed and operated Conti and PlastikGas to suit their own personal convenience.  For example, although Enerra entered several agreements with Conti, it was PlastikGas that sought to perform under those agreements.

17.     Specifically, upon information and belief, at all times relevant hereto, Defendants Roberto Conti, Julie Conti and Jordan Conti, and each of them, (1) controlled the business affairs of Defendants Conti and PlastikGas, and each of them, including any and all of their affiliates; (2) commingled funds and assets for his own personal use; (3) disregarded legal formalities and failed to maintain arm's length relationships among the corporate entities; (4) inadequately capitalized Conti and PlastikGas, and each of them; (5) used the same office or business location and employed the same employees for the corporate entities; (6) held themselves out as personally liable for the debts of the corporate entities; (7) used the corporate entities as mere shells, instrumentalities or conduits for themselves; (8) used the corporate entities to procure labor, services or merchandise for other persons or entities; (9) manipulated the assets and liabilities

between the corporate entities so as to concentrate the assets in one and the liabilities in another; (10) used corporate entities to conceal their ownership, management and financial interests or personal business activities; and/or (11) used the corporate entities to shield against personal obligations.

18.    Upon information and belief, at all times relevant hereto, the acts of corporate Defendants Conti and PlastikGas, and each of them, were performed on their behalf by one or more of their employees, agents, officers, servants or representatives, including without limitation Roberto Conti, Julie Conti and Jordan Conti.

19.    Enerra is informed and believes that, at all times mentioned in this Complaint, that Roberto Conti, Julie Conti and Jordan Conti were acting as the agents of Conti and PlastikGas and were acting within the full course and scope of their agency, employment or joint venture with respect to the acts complained of in this Complaint and with the full knowledge and consent, either express or implied, of each other. For example, Defendants Roberto and Julie Conti possessed, owned, and controlled both Conti and PlastikGas and exercised the power to make decisions on their behalf. Further, Jordan Conti was actively involved in management of both Conti and PlastikGas and was present at all events, and in many cases, acted in place of Roberto Conti or Julie Conti. Jordan Conti also made representations about the technology or finances for Conti and PlastikGas and was an active participant in all of Conti's and PlastikGas' activities and are well aware of the fraudulent nature of their claims.

20.    As such and based on the theories of liability detailed in this Complaint, Defendants Conti, PlastikGas, Roberto Conti, Julie Conti and Jordan Conti are jointly and severally liable to Enerra.

**JURISDICTION AND VENUE**

21.    The Court may exercise subject matter jurisdiction under 28 U.S.C. § 1332. As

-5-

shown above, all Defendants are Texas citizens: the individuals are domiciled here and the entities' members are Texas citizens. Enerra, on the other hand, is a California citizen because it was incorporated there and has its principal place of business there. The parties are therefore completely diverse.

22.     Jurisdiction of this court is proper as the amount in controversy is well in excess of seventy-five thousand dollars ($75,000.00).

23.     Venue is proper in this County pursuant to the agreements between the parties. The Licensing Agreement provides that: "Any action brought to enforce the terms of this Agreement shall be brought in the federal and/or state courts in Dallas County, Texas." (*See* Ex. A at § 7.) Similarly, the contracts attached hereto as Exhibits B-E each provide that: "Any action brought to enforce the terms of this Contract shall be brought in the federal and/or state courts in Dallas County, Texas." (*See, e.g.,* Ex. B at § 15.)

## GENERAL ALLEGATIONS

### The Plastic to Fuel Technology

24.     The key to Defendants' scheme to defraud Enerra of millions of dollars is its purported "plastic to fuel" technology.

25.     Generally, Conti and PlastikGas offer to manufacture, ship, install, commission and provide ongoing maintenance of large-scale installations (the "Plants") that purport to convert plastic waste into various hydrocarbon fuels (the "Plastic to Fuel Technology"). Defendants state that they build the Plants, provide requisite machinery, and license the technology to customers.

26.     On various websites dedicated to Conti and PlastikGas, they describe the virtues of their technology. According to Conti Group's website, it "is the first company worldwide to bring plastic to fuel conversion opportunity to the (sic) forefront," and that it has "developed the reverse engineering     technology     to     return     plastic     to     its     hydrocarbon     state."

https://www.contigroupinternational.com/plastikgas.html. This Plastic to Fuel Technology allows five different hydrocarbons to be recovered: "gasoline, diesel, kerosene, paraffin, and petroleum liquid gas." *Id.* The image below shows the general process that Defendants' Plastic to Fuel Technology offers:



*Id.*

27.     PlastikGas provides the following in its "About Us" portion of the website:



PlastikGas' "What We Do" page explains that "We license our technology so you can build and own your own PlastikGas® Processing Plant PlastikGas®, LLC. will build you a PlastikGas® Processing Plant and license you our proprietary plastic to fuel conversion technology. We design and build your plastic waste conversion plant on your land, anywhere around the world. Our

4884-0846-3426v12/107444-0002

construction company and team of engineers will assist you in the campus build out of your plastic waste conversion plant and provide 12 months of operational support. Your plant will be up and running in 6-9 months and your ROI is 12-24 months." https://plastikgas.com/what-we-do/.

28.    PlastikGas' website also provides outlines of its Plants and processing as follows:



**Process Area**

**Transformation** > **Condensation** > **Vapor** & **Fuel Burner** > **Storage**





## Six fuels are produced:

**Gasoline, Diesel, Kerosene, Paraffin, Petroleum Liquid Gas and Coke (coque)**



Size of plants can process the following amount of plastic per batch:

# 7 tons, 14 tons, 35 tons & 75 tons

4884-0846-3426v12/107444-0002

# Simple processes that are easy to execute



**Processing Plant**

> The plants are designed according to API (American Petroleum Institute)

> Purchase comes with fully functional PlastikGas plant, safety and training manuals and hands-on training.

> Safe design and easy operation, minimum personnel for operation

**What items are included in the plant purchase?**

Vertical deposit feed burner tank with legs

4 horizontal storage tanks with legs,

Detachable ladders and platform

Structures and racks

All necessary tubing and piping

Assembly, installation and calibration of PlastikGas Processing Plant

Operating and Safety Manual Documentation

Plant Operations Training

The customer is purchasing the PlastikGas Processing Plant and is allowed use of the PlastikGas technology
- The customer is NOT purchasing the PlastikGas technology

*See* https://plastikgas.com/why-we-do-it/; https://plastikgas.com/what-we-do/;

https://plastikgas.com/faq/.

## Defendants Fraudulently Induce Enerra To Enter Agreements For The License Of Plastic To Fuel Technology And To Purchase Multiple Plants

29.     Enerra was recently formed as a special purpose entity for the purpose of licensing and commercializing Defendant's Plastic to Fuel Technology.  Enerra's goal is to provide a solution to the local, national, and global issue of plastic waste.

30.     Mark Mills of Enerra was first introduced to Conti through Dean Britt, who was working for Conti at that time.

31.     During a meeting on or about January 1, 2020, Mr. Britt informed Mr. Mills that Conti and PlastikGas had just promoted 102 octane gasoline at an IndyCar race that they claimed was made from plastic.

32.     Soon after, Mr. Mills traveled to Dallas to meet the PlastikGas team on January 11, 2020 to discuss the possibility of an exclusive license.

4884-0846-3426v12/107444-0002

33.    Next, members of Enerra traveled to Mexico to inspect a system that PlastikGas was running at a landfill. Based on that inspection, Enerra decided to explore a license with Defendants.

34.    In order to induce Enerra to enter into the Licensing Agreement and to purchase multiple plants, Defendants sold Enerra a small, pilot plant that they represented functioned just like the larger plants. The small pilot plant that Enerra purchased did eventually perform the process in 5 hours after significant renovation by Enerra at Enerra's sole expense.

35.    On or around January and February of 2021, as part of negotiations and to persuade Enerra to enter into the Licensing Agreement with Conti and forgo other opportunities, Conti's CEO Roberto Conti and other Defendants represented to Enerra that the Plants were able to process all 7 major types of plastic.

36.    Similarly, on or around January and February of 2021, as part of these negotiations, Roberto Conti, Julie Conti and Jordan Conti claimed that the Plants could handle all types of plastic with any level of contamination, including acrylic.

37.    Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti also claimed that their Plants produce high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed polypropylene (PP) with Polyethylene terephthalate (PET) it would get the same fuel yields as blending Low-density polyethylene (LDPE) and polyethylene (PE).

38.    Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti claimed that their Plastic to Fuel Technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified.

39.    Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti claimed that their Plastic to Fuel Technology produced

4884-0846-3426v12/107444-0002

gasoline with 102 octane as they promoted in their website.

40.     Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the Plant design was fully engineered and ready for commercial installation and operations.

41.     Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place.

42.     Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants were completely automated including temperature and pressure controls, pumps, etc.

43.     Also as part of these negotiations on or around January and February of 2021, Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times for the Plants were 5 to 6 hours of total processing.  Roberto Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data provided from the Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

44.     Roberto Conti, Julie Conti and Jordan Conti made these false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel System did not work as represented and Conti intended to use Enerra as a guinea pig for, and to fund, its ongoing research and development.

45.     Believing these and other representations made by Mr. and Mrs. Conti and other senior leaders at both Conti and PlastikGas, Enerra decided to move forward with licensing Defendants' Plastic to Fuel Technology and purchasing Plastic to Fuel Plants from Defendants.

-13-

**The Agreements**

46.     On December 14, 2020, Conti and Enerra entered into an Exclusivity and Technology Licensing Agreement (the "Licensing Agreement") where Enerra agreed to an exclusive license to Conti's Plastic to Fuel Technology, including U.S. Patent Application Nos. 62/897,241 and 60/75,787. A copy of the Licensing Agreement is attached as Exhibit A.

47.     On October 22, 2020, Conti and Enerra entered into Contract No. 2020-0002 (the "Dillon Contract") for Enerra to purchase a Plastic to Fuel Technology Plant to be installed in Dillon, South Carolina (the "Dillon Plant"). A copy of the Dillon Contract is attached as Exhibit B.

48.     On March 26, 2021, Conti and Enerra entered into Contract No. 2021-PG-002-2T-PF (the "Bloomington Contract") for Enerra to purchase a Plastic to Fuel Technology Plant to be installed in Bloomington, California (the "Bloomington Plant"). A copy of Bloomington Contract is attached as Exhibit C.

49.     On June 28, 2021, Conti and Enerra entered into Contract No. 2021-PG-003-7T-PF (Contract No. 3) for Enerra to purchase a Plastic to Fuel Technology Plant to be installed in the future. A copy of Contract No. 3 is attached as Exhibit D.

50.     On December 30, 2021, Conti and Enerra entered into Contract No. 2021-PG-004-7T-EN-02 (Contract No. 4) for Enerra to purchase a Plastic to Fuel Technology to be installed in the future. A copy of Contract No. 4 is attached as Exhibit E. Collectively, Exhibits A-E are the "Agreements."

51.     The Bloomington Contract, the Dillon Contract and Contracts Nos. 3 and 4 are based off the same template and virtually identical in their material terms.

52.     It was not until after the execution of the License Agreement and Contracts that the Enerra began to learn of Roberto Conti's, Julie Conti's and Jordan Conti's pre-closing

misrepresentations.  Indeed, it was not until the delivery of the first plant that it became apparent

that Defendants' Plastic to Fuel System and technology was far from complete and did not function

as Roberto Conti, Julie Conti and Jordan Conti had represented.

### The Plastic to Fuel Technology And Plants Failed To Produce The Promised Results, Defendant's False Promises Are Revealed and Enerra Is Significantly Harmed by Defendant's Breaches

53.     Besides fraudulently inducing Enerra to enter the Agreements in the first instance,

Conti has breached the Agreements according to their own terms in numerous ways, including the

Dillon Plant not being complete and the Bloomington Plant not meeting the required batch times

and fuel quality specifications and not honoring the warranties for those Plants.

54.     After execution of the Agreements, Roberto Conti revealed via several telephone

and Zoom calls starting in October of 2021 that the Cancun plant had had an issue with processing

acrylic, which had damaged the plant.  Roberto Conti also informed Enerra that they could only

have up to 10% acrylic in the plastic, which was safe in the plant.

55.     Mr. Conti's revisions changed again after Enerra began to have problems with

acrylic at the Bloomington Plant sometime in May or June of 2022.  In response, Roberto Conti

and Jordan Conti revised the recommendations again and told Enerra that the plants could not

process any amount of acrylic.

56.     Next, Roberto Conti and Jordan Conti revised their recommendations in person

when visiting the Bloomington facility or about June or July 2022 regarding the specific types of

plastic Enerra could use—removing Polyethylene terephthalate (PET) entirely from the list.  By

this time, Enerra had already purchased 30 million pounds of plastic for the Dillon Plant, which

included a portion of PET.

57.     Roberto Conti, Julie Conti and Jordan Conti also represented on numerous

occasions that the Plastic to Fuel System would produce gasoline with 102 octane level, but the

gasoline produced by the Bloomington Plant has never been close to that level. Similarly, the Cetane level of the diesel produced by the Bloomington Plant falls well below Defendants' promised level. In support of this claim, Roberto Conti provided Enerra a study from a lab in University of King Abdulla of Science and Technology from the Kingdom of Saudi Arabia showing that fuel generated with the Plastic to Fuel Technology had over 100 octane. In fact, the address www.102octane.com redirects users to the website for Conti.

58.    Further, Conti represented in the Bloomington Contract (Ex. C) that the Bloomington Plant would be able to hold and process 2 metric tons (4400 pounds) of plastic per batch. In reality, the Bloomington Plant can only hold approximately 3500 pounds.

59.    Enerra's financial calculations and proformas were predicated on the promised processing times of 5-6 hours per batch with the expectation that it could run at least 4 batches per day per Plant. The Bloomington Plant takes approximately 30 hours of processing per batch.

## The Bloomington And Dillon Plants Have Numerous Flaws

60.    The Bloomington and Dillon Plants lack necessary safety systems. Neither Plant has the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous.

61.    The processing tanks are undersized, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene.

62.    The same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases.

63.    Neither the Dillon nor Bloomington Plant include any emergency systems. The

Plants have no emergency pressure release valves and no flammable gases filtration or evacuation in case of a system failure. The Plants do not have a fire suppression system either, so there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer. Enerra was forced to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

### Deliverables And Their Delayed Timing

64. From October 13 to 15, 2021, Sergio Perez, Mark Mills, Freddie Peterson and Michael Brown from Enerra visited and observed the PlastikGas plant in Cancun, Mexico. During that visit, Roberto Conti, Julie Conti and Jordan Conti each assured the Enerra team that the Bloomington Plant would be delivered by November 2021. It was not delivered until February of 2022.

65. Despite agreeing to provide an Operating Manual and Safety Manual for each Plant, Roberto Conti, Julie Conti and Jordan Conti did not do so in a timely manner. (See Ex. C, at 23, ¶ 3.1.1.)

66. Drawings of the Bloomington Plant were not completed until after delivery of the Plant. When drawings were finally provided, they were not accurate, and they were incomplete, or otherwise lacking necessary information, including electrical drawings, anchoring designs, etc.

67. Jordan Conti did not deliver the Operations Manual for Bloomington until May of 2022, long after the plant was already installed. When they were finally provided, the Operations Manual was incomplete and did not include any detail for operations, safety procedures, or processing times.

68. Despite agreeing to train Enerra's employees to operate the Dillon and Bloomington Plants, Jordan Conti never provided any formal training, including training for

operations, loading, safety and emergency procedures. (See Ex. C., at 24, ¶ 3.3.)

69.    Roberto Conti and Jordan Conti never had adequate support personnel, in terms of number of personnel and their capabilities, come to Bloomington to help with operations. Roberto Conti and Jordan Conti always demanded Enerra have its own employees to do the work while they supervised.

70.    The Bloomington and Dillon Contracts require Conti to provide hoppers and conveyor belts for loading plastic into the reformers. (See Ex. C, at 31.) Roberto Conti and Jordan Conti never delivered these pieces of equipment to the Bloomington or Dillon Plants. The lack of a hopper and conveyor belts forced Enerra to load the reformers manually. To this day this equipment has not been delivered.

### Plant Construction Quality and Operation

71.    Despite warrantying that "all products delivered, manufactured, configured, installed, and calibrated by [Conti] at the time of acceptance are free from defects in workmanship and conform to the requirements of this Contract," the Bloomington Plant has numerous problems. (*See* Ex. C, at 7, ¶ 11.)

72.    The workmanship of the Dillon and Bloomington Plants is substandard.

73.    Many of the pumps provided with the Bloomington Plants were used.

74.    Many operating valves in the Bloomington Plants were used and leaky.

75.    The welding quality for the Bloomington Plants, including pipelines and tanks was substandard. Both of the Bloomington plant reformers had leaks of flammable gases during processing runs, due to poor and weak welds that would break while expanding under pressure and heat.

76.    Enerra was forced to completely regrind and reweld all the bottoms of both reformers in the Bloomington Plant to replace weak welds that could give out and allow for

-18-

flammable gases to escape and create Fires.

77.     The materials used for the construction of the Bloomington Plant, including electrical wires, control panels, steel and insulation, were substandard and not robust enough to withstand the high temperatures and pressure generated by the Plants.

78.     High temperature paint was not used for hot surfaces of the Bloomington Plants. After operation of the Bloomington Plant, all the paint burned away. Enerra had to repaint all hot surfaces with high temperature paint.

79.     The reformers on the Dillon and Bloomington Plants did not have glass inspection ports that would allow one to physically check the burner's flame. Enerra had to retrofit and install the view ports on the Bloomington Plant.

80.     Conti and PlastikGas appear to be incapable of complying with the warranties included in the contracts for the Bloomington Plant. Conti and PlastikGas lack the technical expertise to figure out correct temperature controls and have not calculated the thermal dynamics of the plants correctly. For this reason, there is overheating of the processing tanks, which creates poor quality and below promised quantity fuels and extends the batch processing length to 4 times their warrantied time.

81.     Enerra spent 6 months repairing and modifying the Bloomington Plant at its own expense without reimbursement by Conti or PlastikGas, with every modification approved by Conti or PlastikGas, in order to get it to run consecutive batches. After months of expensive labor and modifications, Defendants have still not figured out yet how to control process temperatures. During a recent visit, PlastikGas requested Enerra to make a further modification to the Bloomington Plant, which would allow for fuel transfers between the processing tanks to cool down the hottest tank with fuel from a cooler tank. This modification did not help in any way and, in fact, extended the batch times further and reduced the fuel yields to more than half the previous

achieved levels.

82.     Beginning in August 2022, via emails and phone calls, and later in a September 8, 2022 email, Jordan Conti claimed that the thermal condensers had been damaged by processing acrylic and needed to be replaced.  Jordan Conti also claimed if Enerra replaced the thermal condensers the Plant would achieve correct batch times.  PlastikGas charged Enerra $75,000 for the new thermal condensers which did not make any difference in processing batch times or fuel quality.  PlastikGas also offered to service and repair the old thermal condenser if Enerra would pay to ship the thermal condenser to their facility in Salamanca, Mexico.  Enerra did so but has not received the cleaned thermal condenser back from the repair shop.

83.     Conti and PlastikGas have failed to provide certification or approval of their fuels from ASTM and EPA as set forth in the Agreements.

84.     Conti and PlastikGas have failed to provide safe, and commercially viable plants.

85.     Nor does the Bloomington Plant operate within the specifications set forth in the Bloomington Contract.

86.     Production runs at the Bloomington Plant, however, produce less than half the promised volume.  Below is a summary of production runs from the Bloomington plant from the last 4 runs in October of 2022 after implementing the latest operating procedures outlined by PlastikGas engineers.

| Fuel | Avg Yield | Defendants' Claims | % To Defendants' Claims |
|------|-----------|--------------------|-------------------------|
| Kerosene (Gal/ton) | 0.0 | 55.6 | 0% |
| Diesel (Gal/ton) | 7.95 | 74 | 11% |
| Gasoline (Gal/ton) | 61.66 | 128 | 49% |
| Paraffin (Lbs./ton) | 0.0 | 110.3 | 0% |

87.     There is no reason to believe that the Dillon Plant or other future Plants will perform differently as Defendants' technology is clearly not ready for commercial operations.

88.    Further, upon information and belief, Defendants' Plastic to Fuel Technology produced fuels have never been approved by the ASTM or certified by the EPA. This lack of certification prevents Enerra from selling its fuel for on-road use.

89.    Further, despite Enerra paying fully for the Dillon plant, including $250,000 for shipping and a further $250,000 for assembly, the Dillon plant remains disassembled at the delivery site. Roberto Conti, Julie Conti and Jordan Conti now refuse to assemble and commission the Plant so that it can be put into operation. Their refusal to assemble further jeopardizes millions of dollars in financing that is contingent on the Dillon plant being operational, which Enerra would otherwise receive.

90.    Upon information and belief, these breaches may further jeopardize future financing that Enerra would otherwise receive.

## Failures In Operations And Safety

91.    A fire occurred the first time the Bloomington Plant was started. Jordan Conti was present when this occurred. The fire was created by a leak of flammable gases from inside the reformer due to the failure of 2 gaskets that join several gas pipes. PlastikGas had installed these gaskets before delivery but had used rubber gaskets instead of gaskets made from high temperature material. Further, PlastikGas did not do a pre check for safety to the plant before their first trial. Once the gas started leaking from these flow pipes into the reformer, it ignited with the flame of the burners, and it burned at a temperature of over 1400 degrees for at least 6 hours. Due to the lack of safety features, there was no way to evacuate the gases from inside the reformer, so they continued to flow and fuel the flames. The damage to Enerra's property, including the Bloomington Plant itself was extensive.

92.    Defendants never gave an explanation for the gasket failure. As further evidence of Defendants' poor Plant design and lack of proper engineering, Jordan Conti and Roberto Conti

then required Enerra to hire a certified welder and restructure the reformer by welding, at Enerra's sole expense.

93.    A second fire occurred in October of 2022, when Enerra was implementing the most recent changes PlastikGas requested for heat control in each of the processing tanks, and to accelerate the batch times. The second fire, also at the Bloomington Plant, occurred when an Enerra staff contractor was following instructions from Edgar Padilla of PlastikGas on purging a gas line at the reformer.  While purging this line, hot flammable gases scaped the valve and ignited in contact with the air.  The Staffer turned off the drain valve but burned his hands and arms in the process.  This is further proof of the incompleteness of Defendants' Plastic to Fuel Technology and using Enerra as a guinea pig to complete their research.

94.    Defendants' failures and breaches of the Agreements are legion.  Defendants are unable to make either the Bloomington or Dillon Plants operate as promised or safely.  Given Defendants' failures, there is every reason to expect that the Plants constructed pursuant to Contract Nos. 3 and 4 will have the same problems.

### Demands For Advance Payments Coupled With Threats

95.    Roberto Conti and Julie Conti have also demanded advance payment on Contract Nos. 3 and 4, despite the fact that such payment is not presently due.  Further, Defendants have even threatened to cease constructing Plant Nos. 3 and 4 unless Enerra makes these advanced payments, despite the fact that Enerra is current with its payments and has paid millions of dollars to date for these Plants.

96.    Roberto Conti, Julie Conti and Jordan Conti via emails and phone calls beginning in August of 2022 also made threats to Enerra including cancelation of technical support, or delivery of documents unless advance payments were made.

97.    On October 21, 2022, Delaina Dries, CFO of PlastikGas, sent an email to Sergio

Perez of Enerra on behalf of PlastikGas, demanding immediate payment of $250,000 despite acknowledging that such payment was not due yet under the terms of Contract No. 3. (Ex. D.)

98.    On November 8, 2022, Delaina Dries sent a further letter on behalf of PlastikGas to Mark Mills of Enerra stating that PlastikGas was suspending all support for the Bloomington Plant for Enerra not paying the demanded money.

## Violation Of Enerra's Exclusive License

99.    Enerra is aware that Roberto Conti and Julie Conti have offered to license the Plastic to Fuel Technology to multiple third parties in the USA, including Buzzballs and Virtus Holdings, in violation of the exclusivity provision in the Licensing Agreement. (Ex. A, ¶ 1.2.)

## FIRST CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT – LICENSING AGREEMENT

## (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

100.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

101.    During negotiations over the Licensing Agreement, Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas made several false and fraudulent representations to Enerra. For example, Conti's CEO Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination. And Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved

and EPA certified. Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Roberto Conti, Julie Conti and Jordan Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

102.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra. Through their experience in operating that Cancun plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane. Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in

place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

103.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas made these false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and fund, its ongoing research and development.

104.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas also fraudulently concealed that the: (1) the Bloomington and Dillon Plants would lack necessary safety systems; (2) neither Plant has the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous; (3) the processing tanks are undersized, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene; (4) the same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases; and (5) neither the Dillon nor Bloomington Plant would include any emergency systems, including but not limited to the facts that the Plants have no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure and that the Plants also lack a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer.

105.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

106.    On information and belief, Roberto Conti's, Julie Conti's and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into the Agreement. Enerra is informed and believes that Roberto Conti, Julie Conti and Jordan Conti knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

107.    In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's representations and concealments, Enerra chose to enter into the Licensing Agreement with Conti and thereby forgoing other business opportunities and proceeded to execute the Agreement. Enerra's reliance on these representations was reasonable and justified given Roberto Conti's, Julie Conti's and Jordan Conti's unique knowledge of their own technology.

108.    Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's representations and known the true facts that were concealed by Roberto Conti, Julie Conti and Jordan Conti , it never would have chosen Conti as a strategic transaction partner and never would have entered into the Licensing Agreement or Purchase Agreements with Conti.

109.    The conduct of Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code §40.011(5). Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas and each of them, in an amount as the jury may find necessary for the sake of example to punish these defendants for their unlawful conduct in an amount sufficient to deter these defendants, from engaging in similar conduct against others in the future.

110.    As a direct and proximate result of the actions of Roberto Conti, Julie Conti and

Jordan Conti acting on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $10 million. Among other expenses resulting from these misrepresentations, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

## SECOND CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT – BLOOMINGTON CONTRACT

### (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

111.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

112.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra. Through their experience in operating that Cancun plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane. Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that

-27-

plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

113.    During negotiations over the Bloomington Contract, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra. For example, Conti's CEO Roberto Conti and other Defendants represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination, including acrylic. And Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Roberto Conti, Julie Conti and Jordan Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti provided from their Cancun plant and pilot plants from Ecuador and Chihuahua,

Mexico.

114.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of PlastikGas made these false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and fund, its ongoing research and development.

115.    Roberto Conti, Julie Conti and Jordan Conti  acting on behalf of Conti and PlastikGas also fraudulently concealed that the: (1) the Bloomington Plant would lack necessary safety systems; (2) the Plant lacked the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous; (3) the processing tanks are undersize, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene; (4) the same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases; and (5) the Bloomington Plant would not include any emergency systems, including but not limited to the facts that the Plant would have no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure and that the Plant also would lack a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer.

116.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

117.    On information and belief, Roberto Conti's, Julie Conti's, and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into the Bloomington Contract.  Enerra is

informed and believes that Roberto Conti, Julie Conti and Jordan Conti knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

118.    In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's s' representations and concealments, Enerra chose to enter into the Bloomington Contract with Conti over other competing offers and proceeded to execute the Agreement. Enerra's reliance on these representations was reasonable and justified given Roberto Conti's, Julie Conti's and Jordan Conti's unique knowledge of their own technology.

119.    Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's' representations and known the true facts that were concealed by Roberto Conti, Julie Conti and Jordan Conti, it never would have chosen Conti as a strategic transaction partner and never would have entered into the Bloomington Contract with Conti.

120.    The conduct of Roberto Conti, Julie Conti and Jordan Conti was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code §40.011(5). Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Defendants for their unlawful conduct in an amount sufficient to deter Defendants, from engaging in similar conduct against others in the future.

121.    As a direct and proximate result of the actions of Roberto Conti, Julie Conti and Jordan Conti on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $10 million for this

Bloomington Agreement. Among other expenses resulting from these misrepresentations, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

### THIRD CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT – DILLON CONTRACT

### (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

122.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

123.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra. Through their experience in operating that Cancun plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane. Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

124.    During negotiations over the Dillon Contract, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra. For example, Conti's CEO Roberto Conti and Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination, including acrylic. And Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the Plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Roberto Conti, Julie Conti and Jordan Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

125.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti made these

false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and fund, its ongoing research and development.

126.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas also fraudulently concealed that the: (1) the Dillon Plant would lack necessary safety systems; (2) the Dillon Plant also would lack ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous; (3) the processing tanks would be undersized, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene; (4) the same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases; and (5) the Dillon Plant would lack any emergency systems, including but not limited to that the Plant would has no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure and that the Plants also lack a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer.

127.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

128.    On information and belief, Roberto Conti's, Julie Conti's and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into the Dillon Contract.  Enerra is informed and believes that Roberto Conti, Julie Conti and Jordan Conti knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

129.   In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's' representations and concealments, Enerra chose to enter into the Agreements with Conti over other competing offers and proceeded to execute the Dillon Contract. Enerra's reliance on these representations was reasonable and justified given Roberto Conti's, Julie Conti's and Jordan Conti's unique knowledge of their own technology.

130.   Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's representations and known the true facts that were concealed by Defendants, it never would have chosen Conti as a strategic transaction partner and never would have entered into the Dillon Contract with Conti.

131.   The conduct of Roberto Conti, Julie Conti and Jordan Conti was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code §40.011(5). Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Defendants for their unlawful conduct in an amount sufficient to deter Defendants, from engaging in similar conduct against others in the future.

132.   As a direct and proximate result of Roberto Conti's, Julie Conti's and Jordan Conti's actions on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $10 million for each of the three Dillon Agreements. Among other expenses resulting from these misrepresentations, Enerra was forced to expend significant sums to design and build a flammable gases evacuation

system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

## FOURTH CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT – CONTRACT NO. 3

### (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

133.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

134.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra.  Through their experience in operating that Cancun plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane.  Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

135.    During negotiations over Contract No. 3, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra.  For example, Conti's CEO

Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination, including acrylic. And the Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Defendants further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Defendants supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Defendants provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

136.    Roberto Conti, Julie Conti and Jordan Conti acting on behalf of Conti and PlastikGas made these false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and fund, its ongoing research

and development.

137.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

138.    On information and belief, Roberto Conti's, Julie Conti's and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into Contract No. 3.  Enerra is informed and believes that Roberto Conti, Julie Conti and Jordan Conti knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

139.    In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's representations and concealments, Enerra chose to enter into Contract No. 3with Conti over other competing offers and proceeded to execute the Agreement. Enerra's reliance on these representations was reasonable and justified given Roberto Conti's, Julie Conti's and Jordan Conti's' unique knowledge of their own technology.

140.    Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's representations and known the true facts that were concealed by Roberto Conti, Julie Conti and Jordan Conti, it never would have chosen Conti as a strategic transaction partner and never would have entered into Contract No. 3 with Conti.

141.    The conduct of Roberto Conti, Julie Conti and Jordan Conti was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code §40.011(5).  Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Defendants for their unlawful conduct in an

amount sufficient to deter Defendants, from engaging in similar conduct against others in the future.

142.    As a direct and proximate result of Roberto Conti's, Julie Conti's and Jordan Conti's actions on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $10 million.  Among other expenses resulting from these misrepresentations, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

## FIFTH CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT – CONTRACT NO. 4

### (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

143.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

144.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra.  Through their experience in operating that Cancun plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane.  Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and

ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

145.    During negotiations over Contract No. 4, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra. For example, Conti's CEO Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination, including acrylic. And the Roberto Conti, Julie Conti and Jordan Conti  claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Roberto Conti, Julie Conti and Jordan Conti Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti  also represented to Enerra that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti  represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti  also claimed that the plants were completely automated including

temperature and pressure controls, pumps, etc.  Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing.  Roberto Conti, Julie Conti and Jordan Conti  supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti  provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

146.    Roberto Conti, Julie Conti and Jordan Conti made these false statements to Enerra on behalf of Conti and PlastikGas about Roberto Conti's, Julie Conti's and Jordan Conti's ' Plastic to Fuel Technology while actively concealing the truth: that Roberto Conti's, Julie Conti's and Jordan Conti's Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and fund, its ongoing research and development.

147.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

148.    On information and belief, Roberto Conti's, Julie Conti's and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into Contract No. 4.  Enerra is informed and believes that Roberto Conti, Julie Conti and Jordan Conti knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

149.    In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's representations and concealments, Enerra chose to enter into Contract No. 4 with Conti over other competing offers and proceeded to execute the Agreement. Enerra's reliance on these representations was reasonable and justified given Roberto Conti's, Julie Conti's and Jordan Conti's unique knowledge of their own technology.

150.    Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's representations and known the true facts that were concealed by Defendants, it never would have

chosen Conti as a strategic transaction partner and never would have entered into Contract No. 4 with Conti.

151.    The conduct of Roberto Conti, Julie Conti and Jordan Conti was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5). Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Defendants for their unlawful conduct in an amount sufficient to deter Defendants, from engaging in similar conduct against others in the future.

152.    As a direct and proximate result of Roberto Conti's, Julie Conti's and Jordan Conti's actions, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $10 million. Among other expenses resulting from these misrepresentations, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

153.    Further, as a direct and foreseeable result of Roberto Conti's, Julie Conti's and Jordan Conti's fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra has incurred attorney's fees and costs and will continue to do so. These fees are recoverable pursuant to Texas Civil Practice and Remedies Code Section 38.001.

-41-

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT: LICENSING AGREEMENT

### (ENERRA AGAINST CONTI AND PLASTIKGAS)

154.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 46 through 99 as though fully set forth.

155.    Enerra and Conti entered into the Exclusivity and Technology Licensing Agreement dated December 14, 2020.

156.    Upon information and belief, PlastikGas is an implied party to the Exclusivity and Technology Licensing Agreement as it is obligated to provide goods and services under the Exclusivity and Technology Licensing Agreement. Further, as an alter ego of Conti, PlastikGas is equally liable for the breaches of the Exclusivity and Technology Licensing Agreement.

157.    Pursuant to the Licensing Agreement, Conti represented that the Plastic to Fuel Technology would work as advertised.

158.    Conti and PlastikGas have breached the Licensing Agreement as the Plastic to Fuel technology has not worked or provided Enerra with the benefits and support it agreed, and which Enerra is entitled, to receive under the Agreement.

159.    Moreover, the Licensing Agreement expressly provides that Enerra would be the exclusive licensee of the Plastic to Fuel Technology. Upon information and belief, Conti and PlastikGas have since sought to license this technology to other parties.

160.    Enerra has performed all obligations required of it under the Licensing Agreement, except to the extent that performance of any such obligation has been excused by Conti's and PlastikGas' non-performance.

161.    As a direct and foreseeable result of Conti's and PlastikGas' conduct and contract breaches, Enerra has suffered damages to be determined according to proof at trial. Among other

expenses resulting from these breaches, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

162.    The conduct of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5). Enerra is entitled to punitive and exemplary damages against Conti and PlastikGas , and each of them, in an amount as the jury may find necessary for the sake of example to punish Conti and PlastikGas for their unlawful conduct in an amount sufficient to deter Conti and PlastikGas , from engaging in similar conduct against others in the future.

163.    Further, as a direct and foreseeable result of Conti's and PlastikGas' fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra has incurred attorney's fees and costs and will continue to do so. These fees are recoverable pursuant to Texas Civil Practice and Remedies Code Section 38.001.

**SEVENTH CAUSE OF ACTION**

**BREACH OF CONTRACT: BLOOMINGTON CONTRACT**

**(ENERRA AGAINST CONTI AND PLASTIKGAS)**

164.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 46 through 98 as though fully set forth.

165.    Enerra and Conti entered into the Bloomington Contract dated October 22, 2020.

166.    Upon information and belief, PlastikGas is an implied party to the Bloomington Contract as it is obligated to provide goods and services under the Bloomington Contract. Further, as an alter ego of Conti, PlastikGas is equally liable for the breaches of the Bloomington Contract.

-43-

167.    Pursuant to the Bloomington Contract Conti agreed, among other things, to properly build the plants, ensure the plants had adequate safety systems, ensuring timely delivery of certain deliverables, and that the Plastic to Fuel technology would work as advertised.

168.    Conti and PlastikGas have breached the Bloomington Contract as the Plastic to Fuel technology has not worked or provided Enerra with the benefits it agreed to receive under the Bloomington Contract.

169.    Conti and PlastikGas also breached the Bloomington Contract, by among other things, failing to install necessary safety systems in the Bloomington Plant. The Bloomington Plant does not have the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous. The processing tanks are undersized, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene. The same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases. Moreover, the Bloomington Plant does not have any emergency systems, no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure, and the Plant also lacks a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer.

170.    In addition, the Bloomington Contract expressly obligated Defendants Conti and PlastikGas to provide certain deliverables in a timely manner. As outlined in preceding paragraphs 46 through 94 of this Complaint, Conti and PlastikGas consistently failed to meet this metric.

171.    In addition, the Bloomington Contract expressly obligates Conti and PlastikGas to construct the Bloomington Plant with a certain level of quality and care. As outlined in preceding

paragraphs 46 through 94 of this Complaint, Conti and PlastikGas consistently failed to meet these criteria. To date, Conti and PlastikGas have refused to resolve various flawed designs but not limited to remedying shoddy build quality, replacement of used parts with all new parts, and remedying leaks of flammable gases.

172. Further, Conti and PlastikGas ceased supporting the Bloomington Plant when Enerra refused their demands for advance payments for invoices that were not due.

173. Enerra has performed all obligations required of it under the Bloomington Contract, except to the extent that performance of any such obligation has been excused by Conti's and PlastikGas' non-performance.

174. As a direct and foreseeable result of Conti's and PlastikGas' conduct and contract breaches, Enerra has suffered damages to be determined according to proof at trial. Among other expenses resulting from these breaches, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

175. The conduct of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5). Enerra is entitled to punitive and exemplary damages against Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Conti and PlastikGas for their unlawful conduct in an amount sufficient to deter Conti and PlastikGas, from engaging in similar conduct against others in the future.

176. Further, as a direct and foreseeable result of Conti and PlastikGas' fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra

has incurred attorney's fees and costs and will continue to do so. These fees are recoverable pursuant to Texas Civil Practice and Remedies Code Section 38.001.

## EIGHTH CAUSE OF ACTION

### BREACH OF CONTRACT: DILLON CONTRACT

### (ENERRA AGAINST DEFENDANTS)

177.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 46 through 94 as though fully set forth.

178.    Enerra and Conti entered into the Dillon Contract dated March 26, 2021.

179.    Upon information and belief, PlastikGas is an implied party to the Dillon Contract as it is obligated to provide goods and services under the Dillon Contract. Further, as an alter ego of Conti, PlastikGas is equally liable for the breaches of the Dillon Contract.

180.    Pursuant to the Dillon Contract Conti and PlastikGas agreed, among other things, to properly build the plants, ensure the plants had adequate safety systems, ensuring timely delivery of certain deliverables, and that the Plastic to Fuel technology would work as advertised.

181.    Conti and PlastikGas have breached the Dillon Contract as the Plastic to Fuel Technology has not worked or provided Enerra with the benefits it agreed to receive under the Dillon Contract. In fact,  Conti and PlastikGas have yet to complete the Dillon Plant despite beginning installation many months ago.

182.    Conti and PlastikGas also breached the Dillon Contract, by among other things, failing to install necessary safety systems in the Dillon Plant. The Dillon Plant does not have the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous. The processing tanks are undersized, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the

gasoline and diesel fuels with paraffins and kerosene. The same issue of no temperature controls creates excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases. Moreover, the Dillon Plant does not have any emergency systems, no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure, and the Plant also lacks a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer.

183.    In addition, the Dillon Contract expressly obligated Conti and PlastikGas to provide certain deliverables in a timely manner. As outlined in preceding paragraphs 46 through 94 of this Complaint, Conti and PlastikGas consistently failed to meet this metric.

184.    In addition, the Dillon Contract expressly obligates Conti and PlastikGas to construct the Dillon Plant with a certain level of quality and care. As outlined in preceding paragraphs 46 through 94 of this Complaint, Conti and PlastikGas consistently failed to meet these criteria. To date, Conti and PlastikGas have refused to construct the first of three ordered systems for the Dillon Plant, even though Enerra prepaid for the installation. The System has been sitting at the site in pieces for months.

185.    Enerra has performed all obligations required of it under the Dillon Contract, except to the extent that performance of any such obligation has been excused by Conti's and PlastikGas' non-performance.

186.    As a direct and foreseeable result of Conti's and PlastikGas' conduct and contract breaches, Enerra has suffered damages to be determined according to proof at trial. Among other expenses resulting from these breaches, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

-47-

187.    The conduct of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5). Enerra is entitled to punitive and exemplary damages against Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Conti and PlastikGas for their unlawful conduct in an amount sufficient to deter Conti and PlastikGas, from engaging in similar conduct against others in the future.

188.    Further, as a direct and foreseeable result of Conti and PlastikGas' fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra has incurred attorney's fees and costs and will continue to do so. These fees are recoverable pursuant to Texas Civil Practice and Remedies Code Section 38.001.

### NINTH CAUSE OF ACTION

### BREACH OF CONTRACT: CONTRACT NO. 3

### (ENERRA AGAINST CONTI AND PLASTIKGAS)

189.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 46 through 94 as though fully set forth.

190.    Enerra and Conti entered into the Contract No. 3 dated June 28, 2021.

191.    Upon information and belief, PlastikGas is an implied party to the Contract No. 3 as it is obligated to provide goods and services under Contract No. 3. Further, as an alter ego of Conti, PlastikGas is equally liable for the breaches of Contract No. 3.

192.    Pursuant to the Contract No. 3 Conti and PlastikGas agreed, among other things, to properly build the plants, ensure the plants had adequate safety systems, ensuring timely delivery of certain deliverables, and that the Plastic to Fuel technology would work as advertised.

-48-

193.    Upon information and belief, Conti and PlastikGas have breached Contract No. 3 as the Plastic to Fuel Technology has not worked or provided Enerra with the benefits it agreed to receive under the various agreements between the parties.

194.    Conti and PlastikGas also breached Contract No. 3 by demanding payment before it was due and threatening to cease construction on the plant, effectively repudiating Contract No. 3.

195.    Enerra has performed all obligations required of it under Contract No. 3, except to the extent that performance of any such obligation has been excused by Conti's and PlastikGas' non-performance.

196.    As a direct and foreseeable result of Conti's and PlastikGas' conduct and contract breaches, Enerra has suffered damages to be determined according to proof at trial. Among other expenses resulting from these breaches, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

197.    The conduct of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5). Enerra is entitled to punitive and exemplary damages against Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Conti and PlastikGas for their unlawful conduct in an amount sufficient to deter Conti and PlastikGas, from engaging in similar conduct against others in the future.

198.    Further, as a direct and foreseeable result of Conti and PlastikGas' fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra has incurred attorney's fees and costs and will continue to do so. These fees are recoverable

pursuant to Texas Civil Practice and Remedies Code Section 38.001.

### TENTH CAUSE OF ACTION

### BREACH OF CONTRACT: CONTRACT NO. 4

### (ENERRA AGAINST CONTI AND PLASTIKGAS)

199.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 46 through 94 as though fully set forth.

200.    Enerra and Conti entered into the Contract No. 4 dated December 30, 2021.

201.    Upon information and belief, PlastikGas is an implied party to the Contract No. 4 as it is obligated to provide goods and services under Contract No. 4.  Further, as an alter ego of Conti, PlastikGas is equally liable for the breaches of Contract No. 4.

202.    Pursuant to the Contract No. 4 Conti and PlastikGas agreed, among other things, to properly build the plants, ensure the plants had adequate safety systems, ensuring timely delivery of certain deliverables, and that the Plastic to Fuel technology would work as advertised.

203.    Upon information and belief, Conti and PlastikGas have breached Contract No. 4 as the Plastic to Fuel Technology has not worked or provided Enerra with the benefits it agreed to receive under the various agreements between the parties.

204.    Conti and PlastikGas also breached the Contract No. 4 by demanding payment before it was due and threatening to cease construction on the plant, effectively repudiating Contract No. 4.

205.    Enerra has performed all obligations required of it under Contract No. 4, except to the extent that performance of any such obligation has been excused by Conti's and PlastikGas' non-performance.

206.    As a direct and foreseeable result of Conti's and PlastikGas' conduct and contract breaches, Enerra has suffered damages to be determined according to proof at trial.  Among other

4884-0846-3426v12/107444-0002

expenses resulting from these breaches, Enerra was forced to expend significant sums to design and build a flammable gases evacuation system, which would send the gases to a carbon activated filter which would neutralize the gases before being released into the atmosphere.

207.    The conduct of Conti and PlastikGas was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code Section 40.011(5).  Enerra is entitled to punitive and exemplary damages against Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Conti and PlastikGas for their unlawful conduct in an amount sufficient to deter Conti and PlastikGas, from engaging in similar conduct against others in the future.

208.    Further, as a direct and foreseeable result of Conti and PlastikGas' fraud, Enerra has been forced to retain legal counsel to commence and prosecute this action. As a result, Enerra has incurred attorney's fees and costs and will continue to do so. These fees are recoverable pursuant to Texas Civil Practice and Remedies Code Section 38.001.

## **ELEVENTH CAUSE OF ACTION**

### **FRAUD**

### **(ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)**

209.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth.

210.    Upon information and belief, Roberto Conti, Julie Conti and Jordan Conti knew from their prior operation of the PlastikGas plant in Cancun, Mexico that their representations to Enerra were false and would mislead Enerra.  Through their experience in operating that Cancun

plant, Roberto Conti, Julie Conti and Jordan Conti knew that that the Plastic to Fuel Technology was not capable of processing all 7 major types of plastic, of handling all types of plastic with any level of contamination, of producing high quality fuels with any type of plastic process and at any combination of volumes, of producing fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified or of producing gasoline with 102 octane. Similarly, Roberto Conti, Julie Conti and Jordan Conti knew that that the plant design was not fully engineered and ready for commercial installation and operations, that they did not possess the necessary drawings in CAD format with all the electrical and mechanical piping and instrumentations diagrams in place, designs and Standard Operating Procedures (SOP) and they knew from the operation of that plant that it was not completely automated including temperature and pressure controls, pumps, etc. and that the batch times were not 5 to 6 hours of total processing.

211.    Prior to entering into the business relationship at the heart of this dispute, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra. For example, Conti's CEO Roberto Conti and Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination. And Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Enerra that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti,

Julie Conti and Jordan Conti represented to Enerra that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Roberto Conti, Julie Conti and Jordan Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

212.    Roberto Conti, Julie Conti and Jordan Conti also represented that the Plastic to Fuel Technology was in the process of being patented. Specifically, Roberto Conti, Julie Conti and Jordan Conti informed Enerra that two patent applications were pending before the United States Patent and Trademark Office. Upon information and belief, those applications have never become issued patents, nor does it appear that these applications are still pending.

213.    Roberto Conti, Julie Conti and Jordan Conti made these false statements to Enerra about Defendants' Plastic to Fuel Technology while actively concealing the truth: that Defendants' Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and to fund, its ongoing research and development.

214.    Roberto Conti, Julie Conti and Jordan Conti also fraudulently concealed that the: (1) the Bloomington and Dillon Plants would lack necessary safety systems; (2) neither Plant would have the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous; (3) the processing tanks would be undersize, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of

all processing tanks, risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene; (4) the same issue of no temperature controls would create excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases; (5) neither the Dillon nor Bloomington Plant would include any emergency systems, including but not limited to the facts that the Plants would have no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure and that the Plants also lack a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer; and (6) upon information and belief, that there were earlier patents and patent applications covering the technology already filed with the United States Patent and Trademark Office.

215.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

216.    On information and belief, Roberto Conti's, Julie Conti's and Jordan Conti's representations were false when made and these representations and concealments were intended to induce Enerra to act in reliance on them and to enter into the relationship with Defendants. Enerra is informed and believes that Defendants knew that the Plastic to Fuel Technology did not operate as advertised, which was intentionally concealed from Enerra.

217.    In reliance on Roberto Conti's, Julie Conti's and Jordan Conti's representations and unaware of their concealments, Enerra chose to enter into a business relationship with Roberto Conti, Julie Conti and Jordan Conti and thereby forgoing other business opportunities and proceeded to execute the License Agreement. Enerra's reliance on these representations was reasonable and justified given Roberto Conti, Julie Conti and Jordan Conti's unique knowledge of their own technology.

218.    Had Enerra known the falsity of Roberto Conti's, Julie Conti's and Jordan Conti's representations and known the true facts that were concealed by Roberto Conti, Julie Conti and Jordan Conti, it never would have chosen Conti as a strategic transaction partner and never would have consummated the business relationship with Conti.

219.    The conduct of Roberto Conti, Julie Conti and Jordan Conti was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Enerra's rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to Texas Civil Practice and Remedies Code §40.011(5). Enerra is entitled to punitive and exemplary damages against Roberto Conti, Julie Conti, Jordan Conti, Conti and PlastikGas, and each of them, in an amount as the jury may find necessary for the sake of example to punish these Defendants for their unlawful conduct in an amount sufficient to deter Defendants from engaging in similar conduct against others in the future.

220.    As a direct and proximate result of Roberto Conti's, Julie Conti's, and Jordan Conti's actions on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages, including consequential damages, in excess of the jurisdictional limit of this Court and in an amount to be ascertained according to proof at trial, but believed to exceed $50 million.

## TWELFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (ENERRA AGAINST CONTI, PLASTIKGAS, ROBERTO CONTI, JULIE CONTI AND JORDAN CONTI)

221.    Enerra re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs 17 through 21 and 25 through 94 as though fully set forth herein.

222.    Prior to entering into the business relationship at the heart of this dispute, Roberto Conti, Julie Conti and Jordan Conti made several false and fraudulent representations to Enerra.

For example, Conti's CEO Roberto Conti, Julie Conti and Jordan Conti represented to Enerra that the Plastic to Fuel Technology was able to process all 7 major types of plastic. Roberto Conti, Julie Conti and Jordan Conti also claimed that the Plants could handle all types of plastic with any level of contamination. And the Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produces high quality fuels with any type of plastic process and at any combination of volumes, so if Enerra mixed PP with PET it would get the same fuel yields as blending LDPE and PE. Roberto Conti, Julie Conti and Jordan Conti claimed that their technology produced fuels that are American Society for Testing and Materials (ASTM) approved and EPA certified. Roberto Conti, Julie Conti and Jordan Conti further claimed that their technology produced gasoline with 102 octane. Roberto Conti, Julie Conti and Jordan Conti also represented to Plaintiff that the plant design was fully engineered and ready for commercial installation and operations. Roberto Conti, Julie Conti and Jordan Conti represented to Plaintiff that they had all the drawings, designs and Standard Operating Procedures (SOP) ready before the execution of the Licensing Agreement and that the drawings were in CAD format, with all the electrical and mechanical piping and instrumentations diagrams in place. Roberto Conti, Julie Conti and Jordan Conti also claimed that the plants were completely automated including temperature and pressure controls, pumps, etc. Roberto Conti, Julie Conti and Jordan Conti further claimed that the batch times were 5 to 6 hours of total processing. Roberto Conti, Julie Conti and Jordan Conti supported this claim based on the operations of the small pilot plant that they sold to Enerra and the data Roberto Conti, Julie Conti and Jordan Conti provided from their Cancun plant and pilot plants from Ecuador and Chihuahua, Mexico.

223.    Roberto Conti, Julie Conti and Jordan Conti on behalf of Conti and PlastikGas also represented that the Plastic to Fuel Technology was in the process of being patented. Specifically, Roberto Conti, Julie Conti and Jordan Conti informed Enerra that two patent applications were

pending before the United States Patent and Trademark Office. Upon information and belief, those applications have never become issued patents, nor does it appear that these applications are still pending.

224.    Roberto Conti, Julie Conti and Jordan Conti made these false statements to Plaintiff about Roberto Conti, Julie Conti and Jordan Conti's Plastic to Fuel Technology while actively concealing the truth: that Roberto Conti, Julie Conti and Jordan Conti's Plastic to Fuel Technology did not work as represented and Conti intended to use Enerra as a guinea pig for, and to fund, its ongoing research and development.

225.    Roberto Conti, Julie Conti and Jordan Conti also fraudulently concealed that the: (1) the Bloomington and Dillon Plants would lack necessary safety systems; (2) neither Plant would have the ability to control temperatures in its processing tanks, which makes the operations of the system irregular and dangerous; (3) the processing tanks would be undersize, which means they cannot handle the volume of gases generated by the reformers, so the result is overheating of all processing tanks; risk of high pressure build up, and poor separation of the different fuels, or contamination of the gasoline and diesel fuels with paraffins and kerosene; (4) the same issue of no temperature controls would create excessive ash or coke that constantly clogs the flow lines, creating a potential risk for back pressure, and leaks of highly flammable gases; (5) neither the Dillon nor Bloomington Plant would include any emergency systems, including but not limited to the facts that the Plants would have no emergency pressure release valves, no flammable gases filtration or evacuation in case of a system failure and that the Plants also lack a fire suppression system such that there is no way to extinguish a fire if there is a leak of flammable gases which ignites inside the reformer; and (6) upon information and belief, that there were earlier patents and patent applications covering the technology already filed with the United States Patent and Trademark Office.

226.    The failure to disclose the actual facts on these matters made the disclosures deceptive.

227.    These statements were made by Roberto Conti, Julie Conti and Jordan Conti in the course of their business, and in the pursuit of a transaction in which the Roberto Conti, Julie Conti and Jordan Conti had a financial interest.

228.    Roberto Conti, Julie Conti and Jordan Conti further had no reasonable grounds for believing these representations were true when they made them.

229.    Roberto Conti, Julie Conti and Jordan Conti further failed to "exercise reasonable care" in gathering or disseminating the false information identified in the foregoing paragraphs.

230.    Roberto Conti, Julie Conti and Jordan Conti intended that Enerra would rely on their representations and Enerra reasonably relied on these representations.

231.    As a direct and proximate result of Enerra's reliance on Roberto Conti's, Julie Conti's, and Jordan Conti's representations on behalf of Conti and PlastikGas, Enerra has suffered injuries and damages.

## PRAYER FOR RELIEF

Enerra prays for the following relief:

1.    For punitive and exemplary damages according to proof at trial;

2.    For damages in an amount according to proof at trial;

3.    For disgorgement of all compensation paid to Defendants;

4.    For recission of the Licensing Agreement, the Bloomington Contract, the Dillon Contract and Contract Nos. 3 and 4 and the return of all amounts paid by Enerra under those Agreements;

5.    For restitution in an amount to be proven at trial, with interest at the statutory rate;

6.    For pre-judgment and post-judgment interest;

7.    For attorneys' fees and costs incurred;

8.    For costs of suit herein; and

9.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Enerra respectfully demands a trial by jury of all causes of action so triable.

Date: January 25, 2023

By: */s/ Bradley D. Liddle*

Douglas Q. Hahn (pending *pro hac vice*)
dhahn@stradlinglaw.com
Ahmad S. Takouche (pendng *pro hac vice*)
atakouche@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH**
**A Professional Corporation**
660 Newport Center Drive, Suite 1600
Newport Beach, California 92660
Tel. (949) 725-4138

William M. Parrish
Texas State Bar No. 15540325
bparrish@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH**
**A Professional Corporation**
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel. (512) 788-5020

Bradley Liddle
Texas State Bar No. 24074599
bliddle@carterarnett.com
Scott Breedlove
Texas State Bar No. 00790361
sbreedlove@carterarnett.com
Stacey Cho Hernandez
Texas State Bar No. 24063953
shernandez@carterarnett.com
Joshua Bennett
Texas State Bar No. 24059444
jbennett@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Tel. (214) 550-8188
**Attorneys for Plaintiff Enerra Corporation**

4884-0846-3426v12/107444-0002